RTG for Ankah Johnson

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

**MAY 0 2 2019**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ MC _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One Apple I phone 8
IMEI: 357275093689187

)
)
)
)
)
)

Case No.

**19MJ9348**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 952/960 | Importation of a controlled substance |

The application is based on these facts:
See Affidavit of Homeland Security Investigations Special Agent John Otis, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Otis, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/2/19

City and state: El Centro, CA

*Judge's signature*

Ruth Bermudez Montenegro, Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

## PROPERTY TO BE SEARCHED

One Apple I phone 8
IMEI: 357275093689187

("TARGET TELEPHONE")

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and Customs Enforcement, 2100 Waterman Ave Suite 100 (Seized Property Vault).

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 15, 2018, up to and including December 17, 2018:

a.      tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.      tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, John Otis, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I make this affidavit in support of an application for search warrant for the following electronic devices:   one Apple I Phone eight cellular phone, IMEI: 357275093689187, ("TARGET TELEPHONE"), described in Attachment A (incorporated herein by reference), which was seized from Michelle DE LA ROSA on December 17, 2018, incident to her arrest for importation of methamphetamine at Calexico, California West Port of Entry.

2.     The TARGET TELEPHONE is currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and Customs Enforcement, 2100 Waterman Ave Suite 100 (Seized Property Vault).

3.     I seek authority to search the TARGET TELEPHONE for evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference) for the period from May 15, 2018, through December 17, 2018.

### TRAINING AND EXPERIENCE

4.     I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations and have been a federal law enforcement officer since August 2008. I am currently assigned to a Contraband Smuggling group in Calexico, California. My duties include investigating the illicit trafficking of controlled substances into the United States. I have received specific training in narcotics investigations and the methods used by narcotics traffickers to import and distribute drugs. I have investigated numerous drug trafficking cases, using many investigative techniques. I have also worked and consulted with many law enforcement officers experienced in drug trafficking investigations.

5.     I have investigated illicit controlled substance trafficking in Calexico and

AFFIDAVIT IN SUPPORT OF APPLICATION              1
FOR SEARCH WARRANT

1  surrounding areas.  I have had formal training and experience in controlled substance
2  investigations and I am familiar with the way controlled substances are manufactured,
3  packaged, marketed, and consumed.  I completed trainings on narcotic investigations that
4  included classroom and field training in the complete investigations of narcotics, sales of
5  narcotics, and the culture of the narcotic sales community.  I have received training in the
6  identification of all types of controlled substances by sight and odor.  In the course of my
7  employment, I have become familiar with the ordinary meaning of controlled substance
8  slang and jargon, and I am familiar with the manners and techniques of manufacturers and
9  traffickers in controlled substances as practiced locally.

10      6.    As an agent, I have participated in numerous major narcotic trafficking
11  investigations.  I have been present and participated in undercover surveillance operations,
12  the purchase of large amounts of narcotics, vehicle stops with large seizures of narcotics
13  recovered, and interviewed many suspects who were arrested to further enhance my
14  training and understanding of the narcotics trafficking industry.

15      7.    During the course of my duties and while assisting other law enforcement
16  personnel, I have interviewed or conversed with countless narcotic users.  From these
17  conversations and interviews, I have become familiar with the manner in which controlled
18  substances are packaged, marketed and consumed.

19      8.    Through the course of my training, investigations and conversations with
20  other law enforcement personnel, I am aware that it is a common practice for narcotics
21  smugglers to work in concert with other individuals and to do so by utilizing cellular
22  telephones to maintain communications with co-conspirators in order to further their
23  criminal activities.  Conspiracies involving narcotics smuggling generate many types of
24  evidence including, but not limited to, cellular phone-related evidence such as voicemail
25  messages referring to the arrangements of travel and payment, names and contact
26  information for co-conspirators, photographs, text messages, emails, messages from text

27
28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR     2
   SEARCH WARRANT

1 messaging cell phone applications such as WhatsApp, social networking messages, and
2 videos reflecting co-conspirators or illegal activity.

3      9.     In preparing this affidavit, I have conferred with other agents and law
4 enforcement personnel who are experienced in the area of narcotics investigations, and the
5 opinions stated below are shared by them.  Further, I have personal knowledge of the
6 following facts, or have had them related to me by persons mentioned in this affidavit.

7      10.    Based upon my training and experience as a Special Agent, and consultations
8 with law enforcement officers experienced in controlled substance smuggling
9 investigations, and all the facts and opinions set forth in this affidavit, I submit the
10 following:

11          a.     Drug smugglers will use cellular telephones because they are mobile and
12      they have instant access to telephone calls, text, WhatsApp and other texting
13      applications, the internet, video, social networking sites, and voice messages;

14          b.     Drug smugglers will use WhatsApp and other encrypted texting
15      applications on cellular telephones to communicate because they believe that these
16      services insulate their communications from law enforcement;

17          c.     Drug smugglers will use cellular telephones because they are able to
18      actively monitor the progress of their illegal cargo while the conveyance is in transit.

19          d.     Drug smugglers and their accomplices will use cellular telephones because
20      they can easily arrange and/or determine what time their illegal cargo will arrive at
21      predetermined locations.

22          e.     Drug smugglers will use cellular telephones to direct drivers to
23      synchronize an exact drop off and/or pick up time of their illegal cargo.

24          f.     Drug smugglers will use cellular telephones to notify or warn their
25      accomplices of law enforcement activity including the presence and location of marked
26      and unmarked units, as well as the operational status of Border Patrol checkpoints.

27
AFFIDAVIT IN SUPPORT OF APPLICATION FOR        3
28 SEARCH WARRANT

**1**       g.    Drug smugglers will use cellular telephones to communicate with each

**2** other regarding payment and other financial arrangements relating to the transportation

**3** of their illegal cargo.

**4**       11.    The facts set forth in this affidavit are based on my own personal knowledge;

**5** knowledge obtained from other individuals during my participation in this investigation,

**6** including other law enforcement officers; interviews; my review of documents related to

**7** this investigation; communications with others who have personal knowledge of the events

**8** and circumstances described herein; conversations with other agents experienced in

**9** controlled substance investigations, and information gained through my training and

**10** experience.  All the dates, times, and amounts listed in this affidavit are approximate.

**11** Because this affidavit is submitted for the limited purpose of establishing probable cause

**12** in support of the application for search warrants, it does not set forth each and every fact

**13** that I or others have learned during the course of this investigation.

**14**                  **FACTS SUPPORTING PROBABLE CAUSE**

**15**       12.    On or about December 17, 2018, at approximately 9:45 p.m., Michelle DE LA

**16** ROSA attempted to enter the United States from the Republic of Mexico through the

**17** vehicle lanes at the Calexico, California West Port of Entry (POE).  De LA ROSA was

**18** the driver, registered owner, and sole occupant of a 2013 Honda Civic bearing California

**19** license plate 8GFY242.

**20**       13.    Customs and Border Protection Officer (CBPO) J. Sandoval was assigned to

**21** vehicle lanes.  CBPO Sandoval received a negative custom declaration from DE LA

**22** ROSA. DE LA ROSA stated that she was visiting her boyfriend in Mexico and returning

**23** home to Riverside, CA.  CBPO Sandoval referred the vehicle to secondary based on a

**24** computer-generated alert.  Canine Enforcement Officer Hedlund searched the vehicle in

**25** with the assistance of a Narcotics/Human Detection Dog (NHDD). The NHDD alerted to

**26** the floor of the vehicle.

**27**

**28** AFFIDAVIT IN SUPPORT OF APPLICATION FOR    4
     SEARCH WARRANT

14.     The vehicle was driven through the Z-portal X-ray machine and CBPO Lopez noticed anomalies in the floor of the vehicle.  CBPO Lopez conducted the secondary inspection of the vehicle and found fifty-eight (58) packages hidden inside the floor of the vehicle.  CBPO Lopez probed a random package and extracted a substance which field tested positive for methamphetamine.  The total weight of the packages was thirty-one point eighty-two (31.82) kilograms of methamphetamine.

15.     Officers placed DE LA ROSA under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance.

16.     At the time of her arrest, DE LA ROSA was in possession of the TARGET TELEPHONE.  The CBPOs seized the TARGET TELEPHONE from DE LA ROSA.  No prior attempts to download the contents of the TARGET TELEPHONE were made.

17.     After DE LA ROSA was arrested, she waived her Miranda rights and agreed to speak with agents.  DE LA ROSA denied knowledge of the drugs in the vehicle.  DE LA ROSA stated that this was her vehicle and that she went to visit her boyfriend Jose Sauceda in Mexicali.  DE LA ROSA stated that Sauceda took her car to get window tinting for a couple of days.  DE LA ROSA admitted that she helped Sauceda smuggle drugs previously.  DE LA ROSA stated that Sauceda would smuggle pills through the Port of Entry.  DE LA ROSA stated that she would drive Sauceda and the drugs from Calexico to Phoenix, Arizona.  DE LA ROSA stated that they would meet an unknown individual in a shopping center in Phoenix.  DE LA ROSA stated that Sauceda would give the unknown person the pills and then he would receive the money.  DE LA ROSA stated that she had done this drug run several times.

18.     Based on this information SA John Otis put a computer-generated alert on Jose Sauceda to be sent to secondary inspection when he crossed into the United Sates. Ten days after DE LA ROSA's arrest, on December 27, 2018, at 12:15 p.m., Sauceda crossed at the Calexico, California West Port of Entry as a pedestrian.  Sauceda was sent

AFFIDAVIT IN SUPPORT OF APPLICATION FOR    5
SEARCH WARRANT

1  to secondary inspection where CBPO Robles discovered a package containing .56
2  kilograms of fentanyl pills. Sauceda was arrested for violating Title 21 United States Code,
3  Sections 952 and 960, Unlawful Importation of a Controlled Substance.

4         19.    Sauceda waived his Miranda rights and agreed to speak with agents. Sauceda
5  stated that the fentanyl pills were his and that he was attempting to smuggle drugs into the
6  United States. Sauceda stated that he knew DE LA ROSA but denied any knowledge of
7  her drug smuggling. Sauceda stated that he was attempting to take the fentanyl pills to
8  Phoenix, AZ.

9         20.    Sauceda was charged in the Southern District of California, Case No.
10 19CR273-CAB, with importation of fentanyl. On March 12, 2019 Sauceda plead guilty to
11 violating Title 21 United States Code, Section 952 and 960. Sauceda is currently awaiting
12 sentencing.

13        21.    A one-count Information filed in the Southern District of California in case
14 number 19-CR-189-GPC charged DE LA ROSA with importation of methamphetamine in
15 violation of Title 21, United States Code sections 952 and 960. On January 15, 2019, DE
16 LA ROSA was arraigned on the Information and entered a not guilty plea. A continued
17 motion hearing and trial setting is scheduled for May 10, 2019, before the Honorable
18 Gonzalo P. Curiel.

19        22.    A copy of the California DMV registration found in the vehicle after DE LA
20 ROSA's arrest indicates that the 2013 Honda Civic was registered to DE LA ROSA and
21 the registration was valid from May 2, 2018, through May 2, 2019. According to DE LA
22 ROSA's border crossing history, DE LA ROSA first crossed in the 2013 Honda Civic on
23 the day of her arrest, on December 17, 2018. DE LA ROSA had not crossed with that
24 vehicle previously.

25        23.    DE LA ROSA's crossing history shows that in the last eighteen months, she
26 had fifteen crossings from Mexico into the United States in several different vehicles.

27
28 AFFIDAVIT IN SUPPORT OF APPLICATION FOR    6
   SEARCH WARRANT

1 Additionally, Sauceda and DE LA ROSA crossed together five times in four different
2 vehicles.

3     24.     On May 15, 2018, Sauceda and DE LA ROSA crossed into the United States
4 driving a 2004 Nissan SUV with Arizona plates CCS0267. On June 30, 2018, DE LA
5 ROSA and Sauceda attempted to cross the same Nissan SUV back into Mexico, but the
6 vehicle was rejected by Mexican Customs and returned to Calexico, California west port
7 of Entry. CBPO officers then inspected the vehicle and discovered a hidden non-factory
8 compartment in the gas tank. The compartment was empty. At the time of the attempted
9 crossing on June 30, 2018, DE LA ROSA was the driver of the Nissan.

10     25.     Based upon my experience and investigation in this case, I believe that DE
11 LA ROSA, as well as other persons as yet unknown, were involved in an on-going
12 conspiracy to import methamphetamine. Based on my experience investigating narcotics
13 smugglers, I also believe that DE LA ROSA may have used the TARGET TELEPHONE
14 to coordinate with co-conspirators regarding the importation and delivery of the
15 methamphetamine, and to otherwise further this conspiracy both inside and outside the
16 United States. I also know that recent calls made and received, telephone numbers, contact
17 names, electronic mail (email) addresses, appointment dates, text messages, messages sent
18 via texting applications such as WhatsApp, email messages, messages and posts from
19 social networking sites like Facebook, photographs, videos, and other digital information
20 are stored in the memory of cellular telephones which identify other persons involved in
21 narcotics trafficking activities.

22     26.     Based upon my experience and training, consultation with other law
23 enforcement officers experienced in narcotics trafficking investigations, and all the facts
24 and opinions set forth in this affidavit, I believe that information relevant to the narcotics
25 smuggling activities of DE LA ROSA, and her co-conspirators, such as telephone numbers,
26 made and received calls, contact names, electronic mail (email) addresses, appointment

27
28 AFFIDAVIT IN SUPPORT OF APPLICATION FOR     7
SEARCH WARRANT

1 dates, email messages, text messages, messages from texting applications like WhatsApp,
2 messages and posts from social networking sites like Facebook, photographs, videos, and
3 other digital information are stored in the memory of the cellular telephone described
4 herein. Because the TARGET TELEPHONE has been in the custody of HSI since the date
5 of DE LA ROSA's arrest, I believe that this information continues to be stored on the
6 TARGET TELEPHONE.

7     27.    Drug trafficking conspiracies require intricate planning and coordination.
8 This often occurs days, weeks, or even months prior to the actual importation of the drugs
9 into the United States. Co-conspirators communicate with one another in efforts to ensure
10 success in getting their valuable cargo to its destination within the United States. In this
11 case, evidence supports that probable cause exists to search the TARGET TELEPHONE
12 for information dating back to May 15, 2018. This is based upon a review of Defendant's
13 crossing history with Sauceda, including in the vehicle that had a hidden non-factory
14 compartment in the gas tank.

15 **SEARCH METHODOLOGY**

16     28.    It is not possible to determine, merely by knowing the cellular telephone's
17 make, model and serial number, the nature and types of services to which the device is
18 subscribed and the nature of the data stored on the device. Cellular devices today can be
19 simple cellular telephones and text message devices, can include cameras, can serve as
20 personal digital assistants and have functions such as calendars and full address books and
21 can be mini-computers allowing for electronic mail services, web services and rudimentary
22 word processing. An increasing number of cellular service providers now allow for their
23 subscribers to access their device over the internet and remotely destroy all of the data
24 contained on the device. For that reason, the device may only be powered in a secure
25 environment or, if possible, started in "flight mode" which disables access to the network.
26 Unlike typical computers, many cellular telephones do not have hard drives or hard drive

27

28 AFFIDAVIT IN SUPPORT OF APPLICATION FOR    8
     SEARCH WARRANT

1  equivalents and store information in volatile memory within the device or in memory cards
2  inserted into the device.  Current technology provides some solutions for acquiring some
3  of the data stored in some cellular telephone models using forensic hardware and software.
4  Even if some of the stored information on the device may be acquired forensically, not all
5  of the data subject to seizure may be so acquired.  For devices that are not subject to
6  forensic data acquisition or that have potentially relevant data stored that is not subject to
7  such acquisition, the examiner must inspect the device manually and record the process
8  and the results using digital photography.  This process is time and labor intensive and may
9  take weeks or longer.

10      29.    Following the issuance of this warrant, I will collect the subject cellular
11  telephone and subject it to analysis.  All forensic analysis of the data contained within the
12  telephone and its memory cards will employ search protocols directed exclusively to the
13  identification and extraction of data within the scope of this warrant.

14      30.    Based on the foregoing, identifying and extracting data subject to seizure
15  pursuant to this warrant may require a range of data analysis techniques, including manual
16  review, and, consequently, may take weeks or months.  The personnel conducting the
17  identification and extraction of data will complete the analysis within ninety (90) days of
18  the date the warrant is signed, absent further application to this court.

19                                   **CONCLUSION**

20      31.    Based on all of the facts and circumstances described above, there is probable
21  cause to believe that DE LA ROSA used the TARGET TELEPHONE to facilitate the
22  offense of importing methamphetamine.  The TARGET TELEPHONE was likely used to
23  facilitate the offenses by transmitting and storing data, which constitutes evidence of
24  violations of Title 21, United States Code, Sections 952 and 960.

25      32.    There is also probable cause exists to believe that evidence and
26  instrumentalities of illegal activity committed by DE LA ROSA continues to exist on the

27
28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR          9
    SEARCH WARRANT

1  TARGET TELEPHONE.

2      33.    Based upon my experience and training, consultation with other agents in

3  narcotics investigations, consultation with other sources of information, and the facts set

4  forth herein, I know that the items to be seized set forth in Attachment B (incorporated

5  herein) are likely to be found in the property to be searched described in Attachment A

6  (incorporated herein).   Therefore, I respectfully request that the Court issue a warrant

7  authorizing me, a Special Agent with Homeland Security Investigations, or another federal

8  law enforcement agent specially trained in digital evidence recovery, to search the items

9  described in Attachment A, and seize the items listed in Attachment B.

10

11                                              John Otis
                                                 HSI Special Agent
12

13  Subscribed and sworn to before me this _____ day of May, 2019.

14

15

16                                              HON. RUTH BERMUDEZ MONTENEGRO
17                                              UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28  AFFIDAVIT IN SUPPORT OF APPLICATION FOR          10
    SEARCH WARRANT